and we'll begin with number 241803 Duran against the Department of Justice. May it please the court, Stephen Goldensweig for petitioner Teresa Duran. With the court's permission, I'd like to reserve three minutes for rebuttal. This case turns on two fundamental errors. First, the board sustained Ms. Duran's removal on a charge the agency never pleaded or charged, a theory of high probability of self-injury that appears nowhere in the proposal, which is at Appendix 220 to 228, nor the decision at Appendix 149 to 152. Second, the board reached that conclusion only by reading an FMLA flare-up certification designed to support intermittent leave one to two days per month as if it were a permanent total medical restriction. My argument has two parts. First, the board sustained Ms. Duran's removal on a theory the agency never pleaded or charged, high probability of self-injury. The only evidence the board cited for that theory, for that theory, an FMLA flare-up form cannot, as a matter of law, support a finding of permanent medical inability. Second, the post-removal OPM disability application cannot rescue the removal. It postdates the deciding official's analysis and under Cleveland v. Apology Management System Corps. Can I ask you to look at the proposed removal? Yeah. Because I don't see what you're talking about. I mean, the basis for it is medical inability to perform duties. Yes, Your Honor. And they found she couldn't perform her duties. Yes. Not just because of the FMLA request where she said she needed an accommodation, but because of her disability request where she certified that she couldn't perform her duties. And the administrative judge relied on that and, in addition to that, heard her live testimony and found it not credible. How can we touch those credibility determinations when the administrative judge said, I don't believe her, I believe the documents, which at the time she was certifying she couldn't do her job? Your Honor, the Briley case itself, which was cited, recognizes the credibility findings are reviewable when they're inherently improbable, discredited by undisputed evidence or contrary to physical facts. Here, the A.J.'s credibility finding rests on a misreading of Cleveland. She discredited Ms. Duran's testimony on an apparent inconsistency that Cleveland says is actually permissible. It's not that it's permissible. It's that in her case, she certified, I can't do my job, so I should get disability. Well, what she certified, Your Honor, was I can't do my job without an accommodation. Okay. Show me in her disability application where it says that. It doesn't say that directly in the application. That's the problem. But the implication, Your Honor, is... No, the implication is not that. The implication is what the document says. And the document says, I need disability because I can't perform my job duties, right? It doesn't caveat it. I understand you can apply for disability and continue to challenge a removal, but you can't do it with flatly inconsistent reasoning, which is what she did here. Your Honor, she explained at trial that she signed it... The administrative judge found at trial that she was not credible, right? That was the finding. What we're saying is the credibility... What's inherently improbable about not believing her when prior documentary evidence, more close in time to these events, contradicted her trial testimony? Sorry, say again, Your Honor? I don't understand how what she testified at trial is some... The credibility finding is somehow so improbable that it can't be deferred to when the credibility finding by the administrative judge is consistent with her actual statements in documents she submitted to the agency. Well, it's against the way... It's her who changed the story at trial. No, Your Honor. It's against the weight of the evidence. There's significant other evidence that's in there that supports what she actually testified to at trial. Counsel, do you at least agree that there's an inconsistency between the sworn statements and the disability annuity application and her testimony? There's an apparent inconsistency, but that's all it is, is apparent, because the Bruner presumption that's generally... You keep talking about the presumption. You need to point me to somewhere in that disability application that suggests she only meant that she couldn't perform without an accommodation, not that she couldn't perform at all. Your Honor, there are several admissions in the record by the agency that the court did not weigh, and, you know, especially those by Mr. Graham, the deciding official. Counsel, I don't think you answered Judge Hughes' question. I think he wants an appendix page where you can point him to exactly what he asked for. A direct... You're talking about the testimony of... The statement in the OPM application or the testimony at trial, Your Honor? And you're saying that her testimony that she was only disabled and couldn't work if she didn't get an accommodation is flatly inconsistent with her disability application, and you say it's not. So where in the disability application does she suggest that her application was only conditional on her not getting an accommodation? It doesn't say it directly in the application. It doesn't say it at all, right? Not in the application. Yes, Your Honor. May I continue? Can you just clarify something for me? In order to get a grant of the disability application, what... Would it make a difference whether she was unable to work full stop or unable to work without accommodations? So this is... Thank you, Your Honor. This is actually one of the main points that we're asserting here, is that when it comes to OPM applications in general, the reason the Bruner case exists is because there are going to be situations where the employee is put essentially into a Hobson's choice of having to decide to go apply for disability retirement or contest the removal. And you essentially get, you know, hamstrung into one or the other. I guess I'm looking for something slightly more direct. If an applicant for disability retirement said, I'm able to work but not without accommodations, what would OPM do or have to do? They still should grant it. If the agency says no accommodations available and there's a removal for medical inability to perform, and then there's an application for OPM disability retirement, they still should grant it in that instance. Now, there is a reality of the situation. Because she's unable to perform the job as required by the agency, because they said this job requires whatever, won't give her the accommodation, requires at least one day in the office, blah, blah, blah, all that kind of stuff. And if they're allowed to do that, if it's reasonable, and if she can't fulfill those duties, then she can apply for disability application. Yes. But she didn't say, I can't do it without an accommodation. She said, I can't work on a computer at all. And therefore, I can't do my job. She had been telling the agency for... No, no, no, no. You want to run around the disability application. But that's in the record. That's what the AJ relied on. That's what the board relied on and more on a substantial evidence review. So unless you can point to me something in that disability application that suggests that the administrative judge and the board have read that application incorrectly, then there's substantial evidence for their decision that she couldn't perform her job duties at all. But that's not, that is a misreading, a misuse of the OPM application. Well, you keep saying it's a misreading, but you refuse to point to me anywhere in the actual application in the appendix that suggests I'm misreading it, the board misread it, or the AJ misread it. You have something in the actual application that suggests we're all misreading it. Not the application. Our contention is that the application itself wouldn't even meet that burden because there's so much evidence of the contrary. But that's a weighing of the evidence. And we have all the record evidence, including your client's testimony, which the AJ found not credible and made a factual determination. We don't re-weigh all that evidence. And particularly when it's based on a credibility determination about weighing her testimony against the actual record evidence of the documents, then there's not much we can do about it. Well, under Lachance, it has to be the way that the agency charges. It has to be consistent with her receiving notice. The standard that was ultimately, and this is part of the legal argument involved, rather than the factual re-weighing of the evidence, is that the high probability of self-injury is something the agency never pled. What they pled was that she just couldn't perform it. And then, but in the board's decision, the board actually says that the agency failed to meet that burden. Do you at least agree that on appeal here to us in your opening brief, you don't challenge the board's use of the contents of the disability annuity application in the medical inability determination? That I don't agree, I don't challenge. The board's use of the contents of the disability annuity application in the medical inability determination? The board is permitted under the current law to consider it, but the way it considered it, our argument is that it violated Cleveland. Because under Cleveland, it's got to be reconciled with Ms. Durand's testimony, not just automatically accepted right off the bat. That's the step that's missing here. The, and the reconciliation makes sense given the length of record that she had. She was a, she had been, she had been receiving. So is your view of proper reconciliation mean that you think the administrative judge has to find her testimony credible? Is that what your view is? Okay, then what is your view of proper reconciliation? The problem is, is that the AJ never actually, without, you know, much explanation on that reconciliation, she made the conclusion. And that was part of the problem. She just essentially says, okay, because it's self-serving, that it, you know, it's not credible, but she actually credits Ms. Durand's testimony in other areas. And, and then in this one area decides not to credit it, doesn't, other than the fact that it's self-serving, doesn't really provide anything. And that, that violates Cleveland. You are into your rebuttal time. So I will reserve. Thank you. Thank you. Good morning, your honors. May it please the court. We're here today because the petitioner is asking that the court disregard the sworn statements that Ms. Durand made in her disability application on which the administrative judge didn't, relied to determine that she was properly removed for medical inability. I mean, it does appear that throughout the time before her removal, she was asking for accommodations that would allow her to do her job. And it doesn't seem anywhere that she said, I can't until the disability application that she couldn't do her job at all. Well, I would. So, and, and I know that in the FLMA stuff, there's some stuff from the doctor that says she can't work on a computer, but it seems like I would read that in the context of what the application is, which is for an accommodation. And she wasn't asking for no computer. She was asking for, you know, shades and working at home a lot in dark rooms. And, and she didn't, at least in the FLMA application, say she could never work on a computer at all. And so why don't we consider that as part of the background and the agency's response? Because the application, help me with the timing. The application for disability is either, at least after the proposed removal, right? Or after the removal itself? Yes, Your Honor. And so the agency certainly wasn't relying on statements in her proposed removal or the disability application for her removal. It was relying only on the documentary evidence before it, which seems pretty thin on whether she couldn't work on a computer at all. Well, we would agree that the board relied both on the disability application and on the FMLA certification, other evidence presented by the agency. So we don't dispute... Leaving aside the disability application, where I think it's pretty clear she said, I can't do any work on a computer at all. Where, what's your best piece of evidence that would support the removal without that, that she can't work on, to work? Two things, Your Honor. The FMLA certification certainly is part of it. We argue in our briefs that that is very consistent with the disability application. But you can see from the face of that certification that, in fact... Can you point me to that? Yes. It's in the appendix at page 1212. And what we see just from a plain reading of that certification is that there's a portion of the form on page 1212... Right, but that's the point that Judge Hughes was referring to. When it says, work on computer, it's not qualified by terms, but in context. Why wouldn't one read it to mean... Well, first, I would agree that the plain language here says, she cannot work on a computer. That's not qualified. It's only the second section of the application, number seven on page 1213, where her doctor additionally says that she has to have some restrictions for her flare-ups. But to answer your question, in addition to that, like first, the context here is that she is directed not to work on a computer or attend meetings occurring in brightly-lighted rooms. That second qualification, attend meetings in lightly-lit rooms, that's something that has always been a continuing and ongoing restriction. It's featured in all of her accommodation requests going back from 2011 through 2015. So the fact that the work on the computer was paired with that restriction does suggest in that context that it was also intended as an ongoing restriction. But even if that were not the case, this certification indicates a new diagnosis that is a baseline Chiari malformation. You can see that at number four on page appendix 1212. That new diagnosis was what triggered, in addition to work on the computer, the agency to ask for clarification. Because it seems that despite her many years of accommodation requests, this diagnosis was never mentioned. It could have triggered additional restrictions and a need for an additional accommodation if possible. And that's what the agency reached out to clarify. And she did not respond to that. She declined to respond. She was given a month to respond. She didn't reach out to her doctor. The agency offered to get a waiver so they could reach out directly. She declined to provide the waiver. So there was no opportunity for the agency to make any decision based on what reasonable accommodation she might have been able to offer. But work on a computer is something that's not only impossible to ignore as one of the essential functions of her current position. But as the agency found, there was no position with an ATF that working on a computer was not an essential function for. So essentially, they had no option but to seek removal of her at that point because she was not cooperating. And as the administrative judge suggested, and I think is relevant for the court to consider, this is the understanding of this form in conjunction with a disability application absolutely explains all of the issues with Ms. Duran's failure to seek or provide additional clarification from her doctor. We can see that because the agency did not provide any additional information the disability application specifically talks about the fact that Mr. Ann quote said that referring to a period beginning August 2011, my doctor advised me on numerous occasions that I would not be able to continue to work. So she appeared to be having ongoing conversations before her removal with her doctor that she would not be able to continue to work at all. What page were you just reading from? I'm sorry, Your Honor. That's the appendix 490 to 491. It begins on 490. She, in fact, goes on to say that she could not engage in physical activities such as driving or walking for any extended distances. She couldn't do household chores. She couldn't and was limited in her ability to self-care. So she describes her disability as quite significant. And this was, again, at the point before her removal had taken place. You also asked Judge Hughes, the petitioner, to explain what in the application was inconsistent with her medical removal. And specifically, he discussed her somehow intending to add the words without a reasonable accommodation to her narrative. That's also in his brief. But in fact, her disability application is not silent on that issue. She asserts, again, as a sworn statement, no accommodations are possible because of the nature, extent, and severity of her medical condition. That's on page 49 of the appendix. So even if this case law that allows you to do both provisionally could be applied, the application here doesn't indicate an intent to do that of pursuing accommodations and disability if they're not granted at the same time. That's exactly right, Your Honor. And it's clear, since you brought up the issue of case law, that the law did allow the administrative judge to consider the disability application. The board cited specifically the Sanders case that was affirmed by the Federal Circuit. In Sanders, they found that it was entirely proper for the board to consider post-removal actions to inform medical disability removal. And that is what happened here. Can you address the point Mr. Goldenstein made about the reliance on a concern about self-inflicted injury? To the extent that my colleague has argued that the agency in its removal decision did not cite the concern about self-harm, we would agree that the charges do not specifically discuss the potential for injury from Mr. Ann's condition. However, the narrative clearly supports it. There's a lot of information about there about forward-looking ability to perform and how her medical conditions would likely to be disabling in that situation. One could certainly easily infer that the consequence of not being able to perform with those conditions would be an injury to herself. And we know that the petitioner reached the same conclusion. Just on kind of the simple logic that if working with a computer and working under lights, et cetera, or working during flare-ups is not possible, then if she's forced to do that, she will be hurting herself. That's exactly right, Your Honor. I would also note that the agency's responsibility is to give notice in the removal decision and the charges. And the petitioner certainly had notice. And we know that they did because in their response to the proposed removal, they cited the standard and included injury to herself or others as one of the things that they discussed. So there clearly was notice that this was one of the bases for the agency's decision. And the petitioner, aside from that, made no claim that there was harm resulting from any failure in the charge itself, that her medical inability was due to her concern about future harm. I would say also that the petitioner has failed to actually make this argument below before the board. So they really should have been considered to have waived it at this stage. Unless the court has further questions. Thank you. Thank you. Mr. Golden, you have the time shown on your clock. Okay. Regarding waiver, the board raised it for the first time in 2024. So that's not something Mr. Wren could reasonably have anticipated. With respect to the OPM application itself, what we can test is the interpretation under Cleveland. The board read the application as a binary admission against interest. Cleveland holds that an apparent inconsistency between the sworn disability application and an ability to work claim must be reconciled, not used as automatic estoppel. The question is weight and legal framework, not admissibility. And also with respect to the deciding official, and this is where some of the evidence comes in, Mr. Graham, who is the deciding official, made three concessions on the record that the government hasn't rebutted. He conceded that the FMLA forms computer restriction connects to flare-ups, which is Appendix 3209. He admitted he never determined whether the existing accommodations were effective, Appendix 3221 to 3222. He admitted he never reviewed Ms. Duran's performance appraisals, Appendix 3223. Those three concessions on their own should defeat the agency's charge, as it was actually constructed at the time of the removal. In addition, Mr. Graham actually, in the decision itself, says that he says that essentially the agency's moving towards more computer use, which means that it wasn't entirely in a heavily computer use setting yet. And then that is also in the proposal as well. One of the important things here is that the form itself, the FMLA form, doesn't actually say in it anywhere that the doctor knew what accommodations were there or whether or not they were effective, because this predated the effective accommodations, which there were effective accommodations that were in place prior to the removal and prior to essentially the agency being intentionally, you know, willfully obtuse with how they were approaching the situation. Thank you very much for this opportunity, and I appreciate it. I appreciate your consideration. Thank you, and thanks to both counsel. The case is submitted.